May it please the Court, the issue in this case, like the one earlier this morning, is the ambiguity of the term isomers. And in this case, it refers to methamphetamine. Now, while this Court — Any difference in the analysis between this case and the prior case? Slightly, Your Honor. But I do want to inform the Court that while we were arguing the last case, this Court also addressed the term isomers in the context of Minnesota law, and it found that the term was unambiguous and overbroad, and therefore that Minnesota's definition of cocaine is overbroad. I don't think there's any way to distinguish that holding here. Nevertheless, for fear of sounding chaotic, I do want to tell the Court a couple other reasons why, and perhaps distinguish it in this case, why methamphetamine's definition is overbroad, recognizing, of course, that the case law in Owen is against us. I want to point to a concrete example that shows ambiguity. Under the defendant's reading of the statute, Minnesota defines methamphetamine to include all of its isomers, not just as optical and geometric, like federal law does — excuse me, just optical, like federal law does. And that concrete example is phentermine. Phentermine, this is borne out in the government's declaration as well as the defendant's. Phentermine is a constitutional isomer of methamphetamine. Under the defendant's reading, phentermine, therefore, is methamphetamine, and it, therefore, is a Schedule II controlled substance. But phentermine is actually listed in Schedule IV. It cannot be that a substance appears in both places. And if it appears in both places, the Court has to harmonize the statute as a whole. It needs to look at the entirety of the statute. And the better reading of the statute is that when the law says methamphetamine's isomers, it's referring to the isomers that are methamphetamine, not any isomer of the chemical formula for methamphetamine. And the only isomers that are methamphetamine are its optical isomers. We know that because both the experts said that. D and L, methamphetamine, are methamphetamine. We know that because Grunwald says that the tests only return a positive result for methamphetamine if it is, in fact, an optical isomer of methamphetamine. Every other substance that's not an optical isomer of methamphetamine has its own name, like phentermine. Another example in the Defendant's Declaration by Heather Harris is a nasal decongestant, an over-the-counter nasal decongestant. But under the Defendant's reading, that over-the-counter nasal decongestant is methamphetamine. And it is a Schedule II offense, therefore. But the schedules have specific criteria in order to be listed in those schedules. Schedule II requires that a substance have a high likelihood of abuse and a high likelihood of dependence and are dangerous. In contrast, Schedule IV substances have a low likelihood of abuse and a low likelihood of dependence. And it bears to reason that an over-the-counter nasal medication has neither of those. But if isomers is read to mean any and all isomers, then that over-the-counter nasal decongestant is a Schedule II-controlled substance. Phentermine is a Schedule II-controlled substance, even though it's in Schedule IV. Another reason we can find ambiguity on it is somewhat related to that. And that's both the rule of lenity as well as the rule not to reach absurd results. As the government pointed out in its reply brief, there are, I believe, I'm getting my different substances confused right now. There are thousands. It's easy to do in this area. Excuse me? It's easy to do in this area. It is easy to do. As I stand here, I can't remember whether MDMA or methamphetamine, but there are thousands of constitutional isomers of methamphetamine. It would be absurd and would violate the rule of lenity to construe the Minnesota statute to cover thousands of substances as opposed to the two optical isomers of methamphetamine. It would also contravene the legislative intent, which we know not only based on the face of the statute, which is to be uniform with federal law, but it's also, when you look at Schedule 2 itself, it's targeted at drugs that are highly addictive. If we included all constitutional isomers, then we're disregarding Schedule 2's criteria. And the absurdity of that result is compounded if you consider the over 200 substances in the Minnesota controlled substance drug laws that are defined by their isomers. Methamphetamine alone has thousands of isomers. Those over 200 other substances that are defined by the unadorned term isomer also have thousands. So now we're looking at a result, a result that apparently we will reach under Owen, where Minnesota law controls hundreds of thousands of substances irrespective of whether those are substances that are listed under. So for that reason, there is ambiguity. And every rule of statutory construction tells this Court that there is ambiguity, everything. Section 645.16 tells us we need to look at the context of the rule, and the context is the substance to which it refers. Methamphetamine substance are only those isomers that are methamphetamine, not the substances that have different names, different psychological effects, different properties. And counsel, thank you for telling us about the Owen case that came out, I see, 50 minutes ago. Yes. So thank you for telling us about Owen. Mr. Wright. May it please the Court, my name is Stephen Wright, appearing on behalf of Patrick Henry. This has become a very different case because of the Owen decision. Owen speaks very plainly to the government's arguments. Mr. Henry's position has been that the use of the term isomers without any limitation is a generic term that refers to all isomers. And in Owen, this Court dealt with a similar situation involving the definition of cocaine, which similarly used an all-inclusive term. And what Owen said is that by specifically mentioning, quote, the isomers of cocaine, end quote, the definition sweeps in any substance with the same chemical composition as cocaine, even if it has a different structural form. Cocaine has, and I'm again quoting from Owen, because it is making my argument here. Cocaine has multiple isomers. We have already concluded that a drug statute that criminalizes even one additional isomer does not qualify as a serious drug felony, citing to Oliver. It should come as no surprise that a statute that reaches even more is overbroad, too. And here they cite to De La Torre, which is the Seventh Circuit case, which dealt with methamphetamine. And they conclude, this means that Owen's third-degree drug sale convictions do not count as serious drug offenses under the ACCA. And then they conclude by rejecting realistic probability because the unambiguity — Unambiguous? Unambiguous overbreadth of the statute is plain on its face, and therefore the realistic probability test does not apply. And so with that citation to Owen, unless the Court has any other questions, I will cede my time. Your Honors, I would just like to point out that the government's interpretation that the only isomers of methamphetamine are those that are, in fact, methamphetamine. We believe that's a reasonable interpretation. And where there's a reasonable interpretation, more than one of those, there is ambiguity. And there's ambiguity here. And this Court should construe isomers to only mean the isomers that are methamphetamine. It's optical isomers. Thank you.  The Court appreciates your time.